UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-00304-MOC
(3:97-cr-00340-MOC-1)

| ARNOLD LORENZO PAIGE, | ) |  |
|---|---|---|
| Petitioner, | ) |  |
| vs. | ) | ORDER |
| UNITED STATES OF AMERICA, | ) |  |
| Respondent. | ) |  |

**THIS MATTER** is before the Court on Petitioner's Pro Se Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1] Petitioner is represented by Ann Hester of the Federal Defenders of Western North Carolina.

I.  **BACKGROUND**

In November 1997, Petitioner Arnold Lorenzo Paige ("Petitioner") entered the lobby of a post office in Charlotte, North Carolina, brandishing a gray snub nose revolver. He put the gun to a post office clerk's face and told him to get on the floor or "I'll kill you." The clerk moved toward the safe to lie down, and Petitioner jumped on the counter line and pointed his gun at a second clerk, whom he also ordered to lie down on the floor. Petitioner again told the first clerk to lie down and threatened to kill him if he did not comply. Both clerks complied. Petitioner took cash from both cash drawers and three bait money orders that were in one of the drawers. Petitioner told the clerks, "If you look up I'll kill you." Petitioner asked the clerks where the money from

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:16-cv-00304-MOC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:97-cr-00340-MOC-1.

Friday was. After the clerks told him it had already been deposited in the bank, Petitioner put his gun to the second clerk's head and told him that he, Petitioner, knew the clerk was able to open the safe. Petitioner told the clerk to open the drawers in the safe. After the clerk did so, Petitioner took the money from the drawers and told the clerk to lie back down. Petitioner gain put his gun to the clerk's head, took the clerk's wallet, and told him, "Don't say anything or you're dead." Petitioner then returned to the first clerk, standing over him with one foot on each side of his body. Petitioner put a gun to the back of the clerk's head and asked where the clerk's wallet was. The clerk told Petitioner it was in his shirt pocket. The clerk rolled to his side, telling Petitioner to take anything he wanted, but "just don't hurt us." Petitioner took the clerk's wallet and jumped over the counter. On his way out, Petitioner confronted a customer who had entered the post office, forcing the customer to life on the floor. Petitioner took the customer's keys and asked what type of car he was driving and attempted to tie him up. Despite the customer giving Petitioner misinformation regarding the car, Petitioner escaped. [CR Doc. 44 at ¶¶ 6-10: Presentence Investigation Report (PSR)].

On May 13, 1998, Petitioner was charged in a Superseding Indictment with one count of assault on a U.S. Postal employee with a deadly weapon, in violation of 18 U.S.C. § 111 (Count One); one count of assault and robbery of U.S. Postal employees with a deadly weapon, in violation of 18 U.S.C. § 2114(a) (Count Three); two counts of use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts Two and Four); one count of possession and attempted disposal of a U.S. Postal money order and aiding and abetting the same, in violation of 18 U.S.C. § 2114(b) (Count Five); one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count Six); one count of possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count Seven); and one count of presentation of a fraudulent U.S.

2

Postal Money Order and aiding and abetting the same in violation of 18 U.S.C. §§ 500 and 2 (Count Eight). [CR Doc. 13: Superseding Indictment]. The Government filed an Information Pursuant to 18 U.S.C. § 3559(c)(4),[2] which set out Petitioner's four previous convictions for a serious violent felony. [CR Doc. 16: Information]. These included a 1978 common law robbery conviction, a 1983 Assault on Officer with a Deadly Weapon ("ADWOGO"), and convictions on June 15, 1984 for second-degree kidnapping and common law robbery. [Id.; see CR Doc. 44 at ¶¶ 47, 49, 50: PSR]. All convictions occurred in North Carolina. [Id.]. The Government also filed a Notice that Petitioner was an Armed Career Criminal under 18 U.S.C. § 924(e)(1)[3] based on the

---

[2] Section 3559(c) provides for a mandatory life sentence for "a person who is convicted in a court of the United States of a serious violent felony" if the person has been convicted on separate prior occasions of two or more serious violent felonies or one or more serious violent felonies and one or more serious drug offenses. 18 U.S.C. § 3559(c)(1). "Serious violent felony" under this provision means:

> (i) a Federal or State offense, by whatever designation and wherever committed, consisting of murder (as described in section 1111); manslaughter other than involuntary manslaughter (as described in section 1112); assault with intent to commit murder (as described in section 113(a)); assault with intent to commit rape; aggravated sexual abuse and sexual abuse (as described in sections 2241 and 2242); abusive sexual contact (as described in sections 2244(a)(1) and (a)(2)); kidnapping; aircraft piracy (as described in section 46502 of Title 49); robbery (as described in section 2111, 2113, or 2118); carjacking (as described in section 2119); extortion; arson; firearms use; firearms possession (as described in section 924(c)); or attempt, conspiracy, or solicitation to commit any of the above offenses; and
>
> (ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another ["force clause"] or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense ["residual clause"] [.]

18 U.S.C. § 3559(c)(2)(F).

[3] The ACCA imposes a mandatory 15-year prison term on a felon who unlawfully possesses a firearm and who has three or more prior convictions for committing certain drug crimes or "a violent felony." 18 U.S.C. § 924(e)(1). The ACCA defines "violent felony" as a crime punishable by more than one year's imprisonment that "(i) has an element the use, attempted use, or threatened use of physical force against the person of another [the "force clause"]; or (ii) is burglary, arson, or extortion, involves use of explosives

3

offenses charged in Counts Six and Seven and on the same four prior North Carolina convictions and that he was, therefore, subject to increased punishment for conviction on these offenses. [CR Doc. 17: Notice]. On August 13, 1998, a jury convicted Petitioner on Counts One through Six. Counts Seven and Eight were voluntarily dismissed. [CR Doc. 29; 8/13/1998 Docket Entry].

Before sentencing, a probation officer prepared a PSR. [Doc. 44: PSR]. The probation officer recommended an adjusted offense level of 24, which was enhanced to 37 after accounting for Petitioner's career offender and armed career criminal status under U.S.S.G. §§ 4B1.1 and 4B1.4, respectively.[4] [Id. at ¶¶ 38, 41]. Based on a total offense level of 37 and a Criminal History Category of VI, the U.S.S.G. (the "guidelines") recommended a term of imprisonment of 360 months to life on Counts One, Three, Five, and Six. Because 18 U.S.C. § 3559(c) required a mandatory life sentence on Counts One and Three, the guideline range became life imprisonment. Finally, Counts Two and Four required mandatory five-year consecutive sentences, but the terms

---

[the "enumerated offenses"] or otherwise involves conduct that presents a serious potential risk of physical injury to another [the "residual clause"]." 18 U.S.C. § 924(e)(2)(B).

[4] Under U.S.S.G. § 4B1.1, "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1 (1998). Like the ACCA's definition of "violent felony," the 1998 Guidelines Manual defined a "crime of violence" to mean "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, [the "force clause"] or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives [the "enumerated offenses"], or otherwise involves conduct that presents a serious potential risk of physical injury to another [the "residual clause"]."

U.S.S.G. §4B1.2(a) (1998).

were to run concurrently because the offenses involved the same weapon and occurred on the same occasion. 18 U.S.C. § 924(c)(1)[5] and U.S.S.G. §2K2.4. [CR Doc. 44 at ¶ 77].

On May 6, 1999, Petitioner was sentenced to terms of life imprisonment on Counts One, Three, and Six; a sentence of 120 months on Count Five to run concurrently with the terms in Counts One, Three, and Six; and terms of five years on Counts Two and Four to run concurrently with each other and consecutively to the terms in Counts One, Three, Five, and Six. [CR Doc. 36 at 2: Judgment]. Judgment was entered on June 9, 1999. [Id.]. Petitioner appealed, arguing that the trial court erred in admitting fingerprint evidence and in admitting testimony presented by the Government's expert witness in latent fingerprint examination. [CR Docs. 32, 39]. The Fourth Circuit affirmed Petitioner's convictions and sentences. [CR Doc. 39].

On June 7, 2016, Petitioner, proceeding *pro se*, filed the pending motion to vacate pursuant to 28 U.S.C. § 2255. [CV Doc. 1]. In his original petition, Petitioner asserted three primary grounds for relief: (1) after Johnson v. United States, 135 S.Ct. 2551 (2015);[6] Welch; and United States v. Gardner, 823 F.3d 793 (4th Cir. 2016);[7] his predicate convictions of ADWOGO and

---

[5] Section 924(c) criminalizes the use of a firearm in furtherance of a "crime of violence." Under § 924(c), a crime is one of violence if it either "has an element the use, attempted use, or threatened use of physical force against the person or property of another," (the "force clause") or "by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "residual clause"). 18 U.S.C. § 924(c)(3)(B). In United States v. Davis, however, the Supreme Court held that the residual clause of § 924(c)'s definition of "crime of violence" is "unconstitutionally vague." 139 S. Ct. 2319, 2336 (2019).

[6] In Johnson, the Supreme Court struck down the ACCA's residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), as unconstitutionally vague and held that enhancing a sentence under the residual clause violates due process. Id. at 2563. Accordingly, after Johnson, a defendant who was sentenced to a statutory mandatory minimum term of imprisonment based on a prior conviction that satisfies only the residual clause of the "violent felony" definition is entitled to relief from his sentence. The Supreme Court has held that Johnson applies retroactively to claims asserted on collateral review. Welch v. United States, 136 S.Ct. 1257, 1265 (2016).

[7] In Gardner, the Fourth Circuit held that North Carolina common law robbery does not qualify as a "violent felony" under the ACCA. 823 F.3d at 804. In 2019, however, the Supreme Court abrogated Gardner in Stokeling v. United States, 139 S.Ct. 544 (2019), as recognized by United States v. Dinkins, 928 F.3d 349

5

common law robbery no longer qualify as violent felonies under the ACCA or 18 U.S.C. § 3559(c); (2) after United States v. Newbold, 791 F.3d 455 (4th Cir. 2015), and Welch, this Court no longer has jurisdiction to maintain Petitioner's "illegal sentence;" and (3) after Gardner and Welch, Petitioner's prior common law robbery conviction is not a crime of violence and, therefore, no longer a valid predicate conviction for career offender status under the U.S.S.G. [CV Doc. 1 at 4-7].

On December 12, 2016, Petitioner, through counsel, filed a supplement to his § 2255 motion to vacate. [CV Doc. 8]. In the supplement, Petitioner had four arguments: (1) his life sentence on Count Six violates due process and exceeds the statutory maximum because Petitioner does not qualify for an ACCA sentence under Johnson because, after Gardner, common law robbery is not a violent felony and Plaintiff's other predicates also do not qualify as violent felonies; (2) after Johnson, Petitioner's offenses of conviction and prior convictions do not qualify as "serious violent felonies" and do not support mandatory life sentences under 18 U.S.C. § 3559(c) for the convictions on Counts One and Three; (3) after Johnson, Petitioner's career offender sentence violates due process because Petitioner's prior convictions do not qualify as crimes of violence under § 4B1.2(a)'s force clause or as enumerated offenses; and (4) after Johnson, Petitioner's § 924(c) convictions on Counts Two and Four violate due process because the predicate offenses, violation of 18 U.S.C. § 111 and 18 U.S.C. § 2114, respectively, are not crimes of violence under the force clause. [See id.]. After ordering the Government to respond, the Court granted the Government's motion to stay this matter pending the United States Supreme Court's decisions in Beckles v. United States, No. 15-8455, and Sessions v. Dimaya, No. 15-1498, and the Fourth Circuit's decision in United States v. Ali, No. 15-4433. [CV Docs. 10, 11]. On

---

(4th Cir. 2019). Thus, there is no question that North Carolina common law robbery is a "violent felony" under ACCA's force cause.

February 9, 2021, after Beckles, Dimaya, and Ali had all been decided, the Court continued the stay pending the Supreme Court's decision in Borden, which was decided in June 2021.[8]

On August 16, 2021, Petitioner filed a second supplement to his motion to vacate "to inform the Court of intervening decisions issued by the Supreme Court and the Fourth Circuit that relate to his claims." [CV Doc. 18 at 1]. Petitioner makes certain concessions in the second supplement, but none that affect the ultimate outcomes of his arguments. That is, Petitioner (1) concedes that common law robbery qualifies as a violent felony after Stokeling and Dinkins, but that Petitioner's ADWOGO and kidnapping convictions do not qualify as ACCA-predicate violent felonies, and, therefore, Petitioner's ACCA sentence violates due process; (2) concedes that his 1978 common law robbery and 1984 kidnapping convictions are both enumerated offenses under § 3559(c), but maintains that § 3559(c)'s residual clause is unconstitutionally vague and that his offenses of conviction do not qualify as violent felonies under the force clause; (3) maintains that his § 924(c) convictions in Counts Two and Four are unconstitutional because 18 U.S.C. §§ 111 and 2114(a) are not crimes of violence for the same reasons that they are not violent felonies under § 3559(c)'s force clause; and (4) concedes that the 1984 Common Law Robbery conviction for which criminal history points were assessed in the PSR is a valid career offender predicate, but that Petitioner's career offender sentence is unconstitutional because the 1978 common law robbery conviction cannot be counted because it did not receive points, ADWOGO does not qualify because it can be committed by culpably negligent conduct and kidnapping does not qualify because it can be committed through fraud. [CV Doc. 18].

The Government timely responded, addressing Petitioner's § 3559(c) argument first. The Government contends and concedes as follows: (1) § 3559(c)'s residual clause is unconstitutional

---

[8] In Borden v. United States, the Supreme Court held that offenses that can be committed with "a *mens rea* of recklessness do not qualify as violent felonies under the ACCA." 141 S.Ct. 1817, 1834 (2021).

but because Petitioner's offenses of conviction for violation of § 111 and § 2114(a) both satisfy the force clause, Petitioner's mandatory life sentences on Counts One and Three are constitutional and should be upheld; (2) for the same reasons as under § 3559(c), § 111 and § 2114(a) are crimes of violence and serve as predicate crimes of violence under § 924(c) and, therefore, Petitioner's convictions on Counts Two and Four are constitutional and should be upheld; (3) Petitioner's career offender challenge is untimely because Johnson-based collateral attacks on mandatory sentencing guidelines are untimely, especially after United States v. Brown, 868 F.3d 297 (4th Cir. 2017), and procedurally barred and without merit, in any event; and (4) finally, the Court should decline to review Petitioner's ACCA sentence under the concurrent sentence doctrine. [CV Doc. 21]. Petitioner replied, [CV Doc. 24], and this matter is now ripe for adjudication.

## II.    STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.   DISCUSSION

This matter now turns on whether § 111 and § 2114(a) qualify as "violent felonies" and "crimes of violence" under the force clause of 18 U.S.C. § 3559(c) and § 924(c), respectively.[9] If so, Petitioner's life sentences on Counts One and Three are constitutional, Petitioner's convictions

---

[9] For the sake of reaching the merits of these issues and because the outcome here is the same regardless, the Court assumes that Petitioner has not waived or procedurally defaulted any of his claims. See Bousley v. United States, 523 U.S. 614, 621-22 (1998).

8

on Counts Two and Four are valid, and the Court can leave Petitioner's ACCA sentence on Count Six undisturbed. If not, the Court must resentence Petitioner on Counts One and Three, vacate Counts Two and Four, and review Petitioner's ACCA sentence.

### A. 18 U.S.C. § 111

At the time of Petitioner's offense, § 111(a) provided that whoever "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 114 of this title while engaged in or on account of the performance of official duties" commits an offense and that an enhanced penalty under § 111(b) applies to anyone who, in committing any of those acts, "uses a deadly or dangerous weapon including a weapon intended to cause death or dangerous weapon … or inflicts bodily injury." 18 U.S.C. § 111 (1997). "Congress has … specifically prescribed the use of force as an essential element of the crime," as "forcibly" modifies the entire list of verbs in this provision. Long v. United States, 199 F.2d 717 (4th Cir. 1952).

The parties agree that Petitioner was convicted of the aggravated offense because he used a dangerous weapon in the commission of the offense. [CV Doc. 21 at 15-16; see CV Doc. 18 at 13]. "[To] sustain a conviction under § 111(b), the Government must prove the elements in [§ 111(a)][10] and that the defendant: (1) used a deadly or dangerous weapon; (2) in the commission of an act described in § 111(a); and (3) the defendant used the weapon intentionally." United States v. Cooper, 289 Fed. App'x 627, 628-29 (4th Cir. 2009) (citing United States v. Feola, 420 U.S. 671 (1975)). "[I]ntent to use the weapon is a necessary element, and a defendant who does so purely by accident does not come within the scope of § 111(b)." Arrington, 309 F.3d at 45.

---

[10] "To violate 18 U.S.C. § 111(a), 'a defendant must: (1) forcibly; (2) assault, resist, oppose, impede, intimidate, or interfere with; (3) a designated federal officer; (4) while engaged in or on account of the performance of official duties … (5) [with] the intent to do the acts specified in the subsection.'" United States v. Ali, 647 Fed. App'x 268, 269 (4th Cir. 2016) (quoting United States v. Arrington, 309 F.3d 40, 44 (D.C. Cir. 2002) (holding evidence was sufficient to support finding that defendant acted intentionally, rather than accidentally)).

9

Because § 111 does not define "assault," the common law meaning applies. See United v. Shabani, 513 U.S. 10, 13, 115 S.Ct. 382 (1994) (following "the settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms"). Common law assault is the "(1) willful attempt to inflict injury upon the person of another, ... or (2) a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, cause a reasonable apprehension of immediate bodily harm." United States v. Lamott, 831 F.3d 1153, 1156 (9th Cir. 2016) (internal quotation marks and citations omitted). Section 111(b) heightens simple assault by also requiring the use of a dangerous weapon, "that is, an object with the capacity to endanger life or inflict serious bodily harm." See Davis v. United States, 430 F.Supp.3d 141, 145-46 (2019) (citing United States v. Sturgis, 48 F.3d 784, 787 (4th Cir. 1995) (defining a "dangerous weapon")).

The force clauses in § 3559(c) and § 924(c) are nearly identical. Under these provisions, an offense is a "violent felony" or "crime of violence," respectively, if it "has as an element the use, attempted use, or threatened use of physical force against the person," and in the case of § 924(c)(3)(A) also the "property," of another. By requiring both common law assault and the use of a dangerous weapon, § 111(b) has an element "the use, attempted use, or threatened use of physical force against the person of another" and, therefore, satisfies § 3559(c) and § 924(c)'s force clauses. Assaye v. United States, No. 1:17-cv-1385, 2020 WL 2950361, at *13 (E.D. Va. June 3, 2020). ("Here, the Court need not reinvent the wheel. Multiple courts in this district have held, and the Fourth Circuit more recently has strongly suggested, that assault on a federal officer with a dangerous weapon in violation of 18 U.S.C. § 111(a)(1) and (b) qualifies as a crime of violence under [§ 924(c)'s] force clause.") (collecting cases).

Petitioner argues that § 111(b) does not satisfy the force clause because it can be committed recklessly. [CV Doc. 18 at 13]. Petitioner reasons that § 111 assault only requires a general intent to assault which "can be established with proof of recklessness." [CV Doc. 18 at 14-15]. Petitioner contends that a defendant could be convicted under § 111(b) "based on reckless or drunk driving that threatened or injured an officer with a car," and, in Borden, the Supreme Court recognized that Congress did not intend for the ACCA to reach this type of offense. [CV Doc. 18 at 16 (citations omitted)]. Petitioner hypothesizes, for instance, that a defendant who drove drunk and recklessly threatened or injured a federal officer engaged in the performance of their official duties could be convicted under § 111(b). [CV Doc. 18 at 16]. The Court cannot engage the "legal imagination" necessary to find that the statute would be applied in this manner. See Moncrieffe v. Holder, 569 U.S. 184, 191 (2013); see United States v. Burns-Johnson, 864 F.3d 313, 319-20 (4th Cir. 2017) (rejecting defendant's argument that "a defendant might intentionally steal a victim's property through [the] unintentional use, or unintentional threatened use, of a weapon"). Rather, the Court concludes, consistent with the great weight of authority, that use of a deadly or dangerous weapon in assaulting a federal officer under § 111(b) requires the requisite use of force. See e.g., United States v. Gray, 980 F.3d 264 (2d Cir. 2020) (holding § 111(b) is categorically a crime of violence under § 924(c)); United States v. Bullock, 970 F.3d 219, 215 (3d Cir. 2020) (holding § 111(b) is a crime of violence under the career offender provision).

As such, because violation of § 111(b) is a "crime of violence" under § 924(c) and by extension a "serious violent felony" under § 3559(c), Petitioner's life sentence on Count One and conviction on Count Two are constitutionally sound. The Court, therefore, denies Petitioner's motion to vacate as to these claims.

### B.     18 U.S.C. § 2114(a)

At the time of Petitioner's offense, § 2114(a) provided:

> Assault.--A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years.

18 U.S.C. § 2114(a). See United States v. Bryant, 949 F.3d 168, 170-80 & n.10 (4th Cir. 2020). This provision "is divisible into at least two parts: a basic version of the crime in the first clause (before the semicolon) and an aggravated version of the crime with an enhanced maximum penalty in the second clause (after the semicolon)." Id. at 174. The aggravated form of the offense includes additional "wounding" or "life in jeopardy by the use of a dangerous weapon" elements and subjects an offender to increased punishment. Id.

Since Bryant, there is no question that the "additional life-in-jeopardy-with-a-dangerous-weapon element transforms [an assault under the basic version of § 2114(a)] into a crime of violence under the force clause." 949 F.3d at 179-80. The Fourth Circuit noted that "[t]he terms 'physical force' [in § 924(c)(3)(A)] means 'violent force,' that is, force 'capable of causing physical force pain or injury in another person.'" Id. (quoting United States v. Evans, 848 F.3d 242, 245 (4th Cir. 2017) (internal quotation omitted)). The Fourth Circuit joined with "those circuits that have held that § 2114(a)'s requirement that the defendant use a dangerous weapon to put the victim's life in jeopardy 'ensures that at least the threat of physical force is present.'" Id. (quoting Knight v. United States, 936 F.3d 495, 500 (6th Cir. 2019)).

12

Count Three of the Superseding Indictment charged Petitioner with "knowingly and by means and use of a dangerous weapon, that is, a snub-nosed 32 caliber handgun, did and attempted to assault forcibly two United States postal clerks … with intent to rob, steal and purloin" property of the United States, in violation of 18 U.S.C. § 2114(a). [CR Doc. 13 at 2]. On this Count, Petitioner was convicted of "assault and robbery of U.S. Postal employees with a deadly weapon" in violation of 18 U.S.C. § 2114(a). [CR Doc. 36: Judgment; see CV Doc. 1 at 1; CV Doc. 8 at 3, 19]. Before Bryant was decided, Petitioner tacitly conceded that he was convicted of the aggravated version of § 2114(a). In his original supplement, he argued that "the addition of an element of 'put[ting the victim's] life in jeopardy by the use of a dangerous weapon' does not make § 2114 a serious violent felony" because "federal law defines 'dangerous weapon' so broadly that any number of substances capable of being used without physical force can qualify as dangerous weapons." [CV Doc. 8 at 22]. After Bryant, in his second supplement, Petitioner argues for the first time that he was convicted only of the basic version of § 2114(a). That is, Petitioner contends that, because the Superseding Indictment did not allege that he used the dangerous weapon "to put the victim's life in jeopardy," which is an essential element of the aggravated version, he was not convicted of that version of the crime. [CV Doc. 18 at 18].

Ignoring Petitioner's failure to challenge the sufficiency of the Superseding Indictment before the Court at trial or on direct appeal, Plaintiff's claim lacks merit in any event. The Superseding Indictment charged Petitioner with using a firearm to forcibly assault two U.S. postal clerks. By charging Petitioner with using a firearm to commit the offense, the Superseding Indictment provided sufficient notice of the charge and enhanced penalty. See United States v. Smith, 44 F.3d 1259, 1263-64 (4th Cir. 1995). Moreover, "[t]he use of a gun is per se sufficient cause to impose the enhanced sentence" under § 2114 because it puts life in danger." United States

13

v. Parker, 542 F.2d 932, 934 (5th Cir. 1976). That is, the use of a dangerous weapon, namely a firearm, to effect a robbery under § 2114 necessarily puts life in jeopardy. See United States v. Newkirk, 481 F.2d 881, 883 (4th Cir. 1973) (holding "proof that the gun was loaded or capable of firing was not required to sustain a conviction of assaulting or placing life in jeopardy" under 18 U.S.C. § 2113(d), which provides for enhanced penalty for one who commits bank robbery by "put[ting] in jeopardy the life of any person by the use of a dangerous weapon or device"). As such, Petitioner was convicted of the aggravated version of § 2114(a), which we know is a crime of violence and a serious violent felony. See Bryant, 949 F.3d at 179-80. Petitioner's life sentence on Count Three and conviction on Count Four, therefore, also remain valid. The Court, therefore, denies Petitioner's motion to vacate as to these claims.

### C. The ACCA Sentence

Petitioner also claims that his ACCA sentence on Count Six is unconstitutional. Petitioner concedes that his North Carolina common law robbery predicates now qualify as predicate violent felonies. He maintains, however, that he does not have the three requisite predicate violent felonies because neither ADWOGO nor second-degree kidnapping qualify as enumerated violent felonies or under ACCA's force clause. [CV Doc. 18 at 2]. Petitioner posits that because North Carolina ADWOGO can be committed with a mens rea of recklessness and because North Carolina second-degree kidnapping can be committed by fraud, they are not violent felonies. [Id. at 6]. The Court declines to review Petitioner's ACCA sentence under the concurrent sentence doctrine.

Under the concurrent sentence doctrine, a court may "leave the validity of one concurrent sentence unreviewed when another is valid and carries the same or greater duration of punishment so long as there is *no substantial possibility* that the unreviewed sentence will adversely affect the defendant or, stated otherwise, so long as it can be foreseen *with reasonable certainty* that the

14

defendant will suffer no adverse collateral consequences by leaving it unreviewed." United States v. Charles, 932 F.3d 153, 155 (4th Cir. 2019). Here, Petitioner's two mandatory life sentences on Counts One and Three remain undisturbed and his life sentence for his § 922(g) offense necessarily runs concurrent to those sentences. Moreover, Petitioner's sentence was driven by the mandatory minimum sentence under § 3559(c), not his classification as an armed career criminal. Thus, the Court foresees with reasonable certainty that Petitioner will suffer no adverse collateral consequences by leaving the ACCA sentence unreviewed.

### D. Career Offender Challenge

Finally, Petitioner challenges his career offender sentence under the unconstitutionally vague residual clause of the then-mandatory career offender guideline. Under United States v. Brown, this Court must conclude that this claim is time-barred. 868 F.3d 297, 299 (4th Cir. 2017). In Brown, the Fourth Circuit held that Johnson-based collateral attacks on the mandatory sentencing guidelines are untimely because Johnson did not recognize a right to be sentenced "without reference to an allegedly vague Sentencing Guidelines' provision." Id. at 301-03; United States v. Sarratt, 836 Fed. App'x 189, 190 (4th Cir. 2021) (unpublished), cert. denied, 2021 WL 4508807 (2021). Because Petitioner's career offender sentence challenge is untimely under 28 U.S.C. § 2255(f), the Court must dismiss it.

### IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 motion to vacate.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: March 27, 2023

Max O. Cogburn Jr.
United States District Judge